REQUESTED BY: Senator Jerome Warner Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Warner:
You have asked certain questions in regard to appropriations made last year in LB 999 in light of line item vetoes by Governor Thone and an opinion of our office on the effect of a particular line item veto from last year. You indicated that it is necessary to have these questions answered so that the appropriations process for this legislative session may be taken in full understanding of certain aspects of the line item vetoes exercised by Governor Thone.
As background, in the last legislative session, in LB 999, section 5, paragraph 4, $13,000 was appropriated for the purpose of paying utilities at a bond financed structure on one of the State College campuses. Governor Thone line item vetoed that $13,000 by reducing the budget for that particular program by that amount. We indicated in a letter to the Director of Administrative Services that that line item veto of $13,000 should not be made up by the expenditure of discretionary funds by the Board of Trustees for that same amount. With that factual background, you ask several questions which we will answer in the order asked.
In your first question you state that similar line item vetoes of utilities language were made in sections 10, 12, and 13 of LB 999, Eighty-sixth Legislature, Second Session, 1980. You ask into what category such vetoes fit, either (1) a specific cut of utilities funding, (2) elimination of earmarking for the purpose of providing increased management flexibility, or (3) a combination of both (1) and (2). In investigating this matter we have determined, through information supplied by the Department of Administrative Services, that the reductions you refer to above dealt solely with earmarking of a part of a fund otherwise appropriated in those sections. It is our understanding that the line item veto of those earmarked sums did not result in a reduction of the amount appropriated for the particular program which was under discussion in those funds. This is unlike the section 5 action which reduced the total appropriation by $13,000. Therefore, it is clear that the line item veto was utilized for the purpose of excising the earmarked amounts but not the total fund. Thus, the earmarking of a specified sum was stricken but the total appropriation remained the same. Conceivably, that total would be available for any of the authorized purposes of that fund.
In your second question you ask whether or not it would be appropriate for the University to expend the state general funds appropriated by sections 10, 12, and 13 for utilities expenses of any facility. It is our understanding that these particular sections in referring to the underlying budget documents do include sums to be utilized for the purposes of paying utilities expenses as well as other expenses designed to fund the operation of University activities. To the extent that requires the expenditure of sums for utilities expenses, obviously the University would be authorized to expend those sums for those purposes.
In the second part of your question you ask whether or not this would include expenditure of General Fund money for utilities for revenue bond facilities. We would point out to you that Neb.Rev.Stat. § 85-409 (Reissue 1976) provides that the Board of Trustees of the Nebraska State Colleges and the Board of Regents may furnish heat, light, power and other similar utilities to any building or structure for any activity covered under Neb.Rev.Stat. §§ 85-403 to 85-411
(Reissue 1976) without charging those amounts against the revenue derived from the operation of such buildings. Thus, the Legislature has clearly authorized the expenditure of General Fund monies for the provision of utilities to revenue bond structures. The Nebraska Constitution, in ArticleXIII, Section 1, contains a proviso that in part provides:
 The Board of Regents . . . the Board of Trustees . . . and the State Board of Education may issue revenue bonds to construct, purchase or otherwise acquire, extend, add to, remodel, repair, furnish and equip dormitories, residence halls, single or multiple dwelling units or other facilities for the housing and boarding of students, single or married, and faculty or other employees, buildings and structures for athletic purposes, student unions or centers, and for the medical care and physical development and activities of students, and buildings or other facilities for parking, which bonds shall be payable solely out of revenue, fees and other payments derived from the use of the buildings and facilities constructed or acquired, including buildings and facilities heretofore or hereafter constructed or acquired, and paid for out of the proceeds of other issues of revenue bonds, and the revenue, fees and payments so pledged need not be appropriated by the Legislature, and any such revenue bonds heretofore issued by either of such boards are hereby authorized, ratified and validated.
There is no specific limitation in this section of the Constitution which prohibits the Legislature from providing operational fundings for such things as utilities. It is certainly a questionable practice for the Legislature to provide such sums. The question would become even more tenuous if you were dealing with renovation or repairs or rebuilding such buildings should there be a complete loss with no insurance coverage. Obviously, a great many murky legal questions could arise were this section construed in an overly broad manner.
For these reasons, we feel constrained to say that while not clearly a constitutional violation, such use of general funds has serious constitutional implications if carried too far.
In your last question you ask whether or not it would be inappropriate for the Board of Trustees to use their Discretionary Fund to exceed the Governor's 8 percent salary policy. We would refer you to the Governor's veto message on LB 999, LB 998, and LB 1001, as well as his veto message on LB 995 and LB 996, Eighty-sixth Legislature, Second Session, Legislative Journal, pp. 1732 and 1854. We believe those veto messages make clear that the Governor is reducing General Fund appropriations to a sum which would fund an 8 percent salary increase for the employees of the Board of Trustees. We believe that veto message also makes clear that the Governor has indicated that if the board can come up with other money, they are free as far as he is concerned to exceed the 8 percent increase he recommended for employee salaries. We believe, given this factual situation, your question is answered by the terms of the veto message which the Governor issued.
If you have any further questions in this regard, please feel free to contact us.
Sincerely, PAUL L. DOUGLAS Attorney General Patrick T. O'Brien Assistant Attorney General